UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WINSTROM and
VERONICA WINSTROM,

      Plaintiffs,

File No. 1:13-CV-1271

v.

HON. ROBERT HOLMES BELL

C&M CONVEYOR, INC.,

      Defendant.
                                              /

**O P I N I O N**

This matter is before the Court on Defendant C&M Conveyor, Inc.'s motions for summary judgment against Plaintiffs James and Veronica Winstrom. (ECF Nos. 27, 44.) On November 21, 2013, Plaintiffs brought suit against Defendant alleging defective product design, breach of implied warranty, and loss of consortium after Plaintiff James Winstrom was seriously injured at his employer's manufacturing facility by a materials transfer car, which was designed, manufactured, and sold by Defendant. (ECF No. 1.) For the reasons that follow, Defendants' motions for summary judgment will be granted.

**I. Background**

Plaintiff James Winstrom was employed in 2012 at Advance Packaging Corporation, which is in the business of designing and manufacturing corrugated box packaging. (Compl. ¶ 8, ECF No. 1.) Advance Packaging moved into its current facility on 40th Street, Southeast, in Grand Rapids, Michigan, in 2006 in part to improve its material handling processes. (Dep.

of Michael Sylvester 9:7-17, ECF No. 27, Ex. A.) In this facility, stacks of sheets are discharged from the corrugated box processing machines onto the conveyor system, which transports the materials to various staging areas to await delivery to other machines. (ECF No. 32, Ex. 4 at 12.)

The conveyor system at the Advance Packaging facility includes automated transfer cars to transport corrugated material along designated conveyor routes between machinery. (Compl. ¶ 9, ECF No. 1.) C&M, headquartered in Indiana, manufactured and sold the conveyor system to Advance Packaging. C&M specially designed the conveyor system to accommodate the work flow from each piece of Advance Packaging's manufacturing equipment. (Dep. of Michael Sylvester 27: 6-12, ECF No. 27, Ex. A; Dep. of Howard Carlson 12:8–19, ECF No. 34, Ex. 5.) C&M itself manufactures most of the heavy-duty roll conveyor equipment used in conveyor systems like the one at the Advance Packaging facility. (Dep. of Howard Carlson 9:14–24, ECF No. 34, Ex. 5.)

C&M also specially modified the transfer cars for Advance Packaging because Advance Packaging required a wide bed to hold the corrugated materials. (*Id.* 14:22–25.) Each transfer car weighs about 12,000 pounds. (*Id.* 115:8–10.) The automated transfer cars have a laser scanner which functions like eyes to sense obstacles in the car's path and stops the car. (Compl. ¶ 10, ECF No. 1.)

The transfer cars cannot function independently of the conveyor system, as explained by the transfer car engineer:

2

> [I]t is not a component. It is a piece of the system. . . [Y]ou know, there's more involved than just this car, than just the car itself. It gets its controls from other parts of our system. That car can be operated as manual, but that is not its function. The function of that is to transport material back and forth through a computer system that we can—known as our CIMS system. And that is the overall controlling—control for this whole plant. It knows when it gets the material off the corrugator and when it needs to be put on a finishing machine way on the other side of the building.

(Dep. of Howard Carlson 88: 12–25, ECF No. 27, Ex. B.) The transfer cars themselves are "trapped" to their track; they cannot be driven around or moved independent of their tracks. (Dep. of Michael Sylvester 89: 15–19, ECF No. 27, Ex. A.) The cars move by means of a central control panel and power system. (Dep. of Howard Carlson 90: 3–15, ECF No. 27, Ex. B.) Even when in manual mode, the cars receive power from an overheard collector bar system that feeds into the central control panel and a driver operates the system with a joystick. (*Id*. 90:9–15.) There is no battery or independent power source for the transfer cars, which renders them immobile outside of the conveyor system. (*Id*. 114: 13–25.) The cars are not available for purchase independent of a conveyor system. (*Id*. 13:18–25.)

The Computer-Integrated Inventory Management System ("CIMS") is a computer program that interfaces with Advance Packaging's machinery and in-house scheduling system in order to monitor and provide direction to each individual transfer car in the conveyor system. (ECF No. 32, Ex. 4 at 10.) The CIMS system sends pick-up and drop-off messages to a floor panel, which relays the directions to a transfer car through a radiofrequency modem. (Dep. of Jeff Endris 13:16–14:18, ECF No. 27, Ex. C.)

3

Plaintiff James Winstrom alleges that, on August 22, 2012, he was off-loading a stack of corrugated material from one conveyor to another when he was crushed by a transfer car. (Compl. ¶ 12-14, ECF No. 1.) Mr. Winstrom further alleges that, because of the absence of various safety precautions, the automated car did not provide adequate visible and audible warnings to Mr. Winstrom, nor stop automatically when it sensed his presence. (Compl. ¶ 19, ECF No. 1.)

On November 21, 2013, Plaintiffs filed a tort action against C&M, alleging defective product design, breach of implied warranty, and loss of consortium. (ECF No. 1.)

## II. Legal Standard

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).

### III. Analysis

**A. Choice of Law**

The first issue ripe for decision is the appropriate application of state law in this diversity suit. Indiana and Michigan have inconsistent statutes of repose for actions against contractors for improvements made to real property. Plaintiffs argue that Indiana's Statute of Repose should apply, which bars an action after ten years. Ind. Code § 32-30-1-5. Defendant moves for summary judgment under the Michigan Statute of Repose, which bars an action after six years. Mich. Comp. Laws § 600.5839.

This Court, sitting in diversity, applies the choice of law rules of Michigan. *Klaxton v. Senator Elec. Mfg. Co.,* 313 U.S. 487 (1942); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). In *Sutherland v. Kennington Truck Service*, *Ltd.,* the Michigan Supreme Court explained its choice of law analysis, presuming that Michigan substantive law will apply unless a "rational reason" to do otherwise exists:

> In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

562 N.W. 2d 466, 471 (Mich. 1997).

The Michigan choice of law analysis focuses on (1) the interests of Michigan and Indiana in applying its own product liability law, and (2) Michigan's interest in applying its

5

own law despite the interest of Indiana. *See In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 801 (E.D. Mich. 1989). Michigan's interest in applying its law derives from its location as the site of injury, Plaintiff's residence, and the conveyor system installation and operation. Plaintiffs claim that Indiana has an interest in having its law applied because Defendant's principle place of business is in Indiana, and Indiana has interests in "ensuring predictability of results for its corporate citizens." (Pls.' Br. 11, ECF No. 31). Plaintiffs offer no case law or authority to support their contention that these are recognized interests of Indiana. Cases addressing the applicability of New Jersey and Minnesota law are irrelevant and distracting from the proper analysis under Michigan's choice of law rules. Invocations of generalized interests in 'certainty' and 'predictable results" "play little if any role in modern choice of law analysis under Michigan law." *Standard Fire Ins. Co. v. Ford Motor, Co.* 723 F.3d 690, 698–99 (6th Cir. 2013).

Moreover, Indiana itself would apply Michigan law in this case. Indiana historically employs *lex loci delicti* as its choice of law principle in adjudicating tort claims, suggesting that its interest in the outcome of this case does not outweigh Michigan's interest. *See Simon v. United States*, 805 N.E. 2d 798, 802 (Ind. 2004) (citing *Hubbard Mfg. Co. v. Greeson*, 515 N.E. 2d 1071, 1073 (Ind. 1987)); *see also Muncie Power Prod., Inc. v. United Tech. Auto, Inc.,* 328 F.3d 870, 878 (6th Cir. 2003). The Court finds that Michigan's interest in applying its law outweighs Indiana's interest. *Cf. Pina v. Chrysler Group, L.L.C.,* No. 14-10716 2014 WL 4112918, at *2 (E.D. Mich. Aug. 19, 2014) (citing Michigan cases in which the court

found greater interests in applying the law of the place of injury and plaintiff's residence, rather than the law of the place of defendant's headquarters).

Finally, Plaintiffs plead their causes of action expressly under Michigan statutes and have filed numerous motions assuming the applicability of Michigan law. Their attempts to invoke Indiana law now are belated and disingenuous. For these reasons, Michigan law will apply to Plaintiffs' tort claims.

**B. Michigan Statute of Repose**

The second issue ripe for decision is whether Michigan's contractor statute of repose bars Plaintiffs' action. The statute provides,

> (1) A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within either of the following periods:
>
> > (a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

Mich. Comp. Laws § 600.5839.

There are no genuine issues of material fact concerning the nature and characteristics of the conveyor system. The parties contest whether the facts support a determination that the transfer cars and conveyor system constitute an improvement to real property. The conclusion that the conveyor is an improvement is a determination as a matter of law. *Adair v. Koppers Co., Inc.*, 741 F.2d 111, 114 (6th Cir. 1984).

7

The gist of Defendant's argument is that the transfer car at issue is just a component of a massive material handling system, and that system constitutes an improvement to Advance Packaging's manufacturing facility. Defendant installed the system on or by January 2007. Plaintiff filed suit on November 21, 2013. Thus, more than six years have passed since the improvement was made and Section 600.5839 bars the action.

In response, Plaintiffs argue that the Michigan statute of repose is not applicable because the C&M is not a contractor and the transfer cars are not an improvement to real property. Plaintiffs contend that this is a product liability claim because the negligence relates to the design of the transfer cars, not to the manner of construction or workmanship of the cars or the system.

**1. Was C&M a contractor for purposes of Michigan's statute of repose?**

Plaintiffs argue that the Michigan statute of repose is inapplicable because C&M does not qualify as a contractor that made improvements to real property. Plaintiffs place great weight on the fact that C&M was not the sole contractor providing improvements to the Advance Packaging facility. Defendant cannot claim it made an improvement, say Plaintiffs, if the transfer car would not be operational absent the work done by other contractors. Plaintiffs point out that another technology corporation designed the CIMS software and provided its instruction manual (ECF No. 34, Ex. 12), and that Advance Packaging itself provided conveyor equipment from its old facility (ECF No. 33, Ex. 4b) and the new beams for the transfer cars to ride on (ECF No. 32, Ex. 4). This argument is factually unsupported

8

because C&M provided the computer servers configured with CIMS (ECF No. 33, Ex. 4b at 25), and re-installed and reconfigured all the reused equipment (ECF No. 33, Ex. 4b at 38–43). C&M designed, manufactured, and installed the majority of the conveyor system components. Moreover, many improvements to real property are executed by a collection of general and sub-contractors; contractors do not lose their status as contractors for that reason.

Plaintiffs emphasize that C&M is not a state licensed architect or professional engineer under Section 600.5839(1). Professional licensing is irrelevant. *Matthews v. Beloit Corp.*, 807 F. Supp. 1289, 1292 (W.D. Mich. 1992) ("The statute does not require that a contractor be licensed."). The statute provides coverage for "any contractor making the improvement," defining a contractor as "an individual, corporation, partnership, or other business entity which makes an improvement to real land." Mich. Comp. Laws §§ 600.5839(1) and (4). The statute does not define a contractor as narrowly as Plaintiffs suggest. *See Oakwood Hosp. & Med. Ctr. v. Goodwin Elec.*, 183 F. Supp. 2d 936, 940 (E.D. Mich. 2012). C&M qualifies as a contractor under the statute.

**2. Was the conveyor system an improvement to real property?**

Michigan courts have adopted the "common sense" approach of the U.S. Court of Appeals for the Sixth Circuit in determining what constitutes an improvement under the contractor statute of repose. *Adair*, 741 F.2d at 113; *Caron v. Cranbrook Ed. Cmty.*, 828 N.W. 2d 99, 103-04 (Mich. App. 2012); *Dominguez v. Lanham Mach. Co.*, 122 F. Supp. 2d 852 (W.D. Mich. 2000).

In *Adair*, the Sixth Circuit defined an improvement as "[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." 741 F.2d at 114. The Court considered four factors in its analysis: (1) "whether a modification adds to the value of the property for the purposes of its intended use;" (2) "the nature of the improvement;" (3) "its relationship to the land and its occupants;" and (4) "its permanence." *Id*.

### i. Nature of the improvement

Plaintiffs assert that the injury did not arise out of the defective or unsafe condition of an improvement to real property, but to the faulty design of a product, namely the transfer cars. Plaintiffs claim that the transfer cars should have included warning mechanisms such as strobe lights or louder beepers.

Plaintiffs' theory of product liability does not entirely correlate with Plaintiffs' theory of injury. Plaintiffs argue that C&M produced a poor design for the conveyor system because there was a gap between the transfer car and the adjacent conveyor such that it creates a "pinch point." (Pls.' Br. 2, 7 ECF No. 31.) Plaintiff was injured when he inadvertently stepped into that pinch point and the passing transfer car crushed his legs. (*Id*.) This theory of injury depends on a faulty construction design; that is, C&M designed and engineered a system in which a person could be injured between the conveyor system rolls and the transfer car. The faulty design of the transfer cars cannot be analyzed independently from the design

of the conveyor system because the injury occurred when the transfer car operated within the conveyor system.

The transfer cars are an integral component of the conveyor system, which itself is an improvement to real property. The Sixth Circuit addressed a nearly identical factual scenario in *Adair*, where the plaintiff was injured when his arm become trapped between a pulley and a belt in a conveyor system used to transfer coal from railroad tracks to coke ovens. 741 F.2d at 114. The plaintiff's arguments focused primarily on the individual components of the conveyor system, which were in the nature of equipment rather than improvements. *Id*. at 114–15. The court disagreed with the plaintiff's artificial distinction between the parts and the whole because of the the 'integral' role of the conveyor within the coal handling system:

> The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components.

*Id*. at 115 (quoting *Mullis v. Southern Co. Serv., Inc.*, 296 S.E. 2d 579, 584 (Ga. 1982)). Here, the transfer cars are similar to equipment but they are inseparable from the entire conveyor system. The cars are not sold independently and cannot function independently of the rest of the system. Plaintiffs contend that the transfer car is not integral to the material handling system because the car is not included in every system setup C&M designs. However, C&M specially designed both the system and the cars to fit Advance Packaging's needs.

Plaintiffs attempt to separate the car from the system because the faulty design of the transfer car, which occurred in Indiana, arose prior to the installation of the system in Michigan. (Pls.' Br. 12–13, ECF No. 31.) But the transfer cars were designed specifically for the particular conveyor system installed at Advance Packaging. Plaintiffs cannot separate the design of the cars from the conveyor system itself because C&M designed and constructed the cars to work in tandem with the system. As the Michigan Court of Appeals explained in *Abbott v. John E. Green, Co.*, the purpose of the statute of repose is to protect contractors from open-ended liability for defects in workmanship. 592 N.W. 2d 96, 100 (Mich. Ct. App. 1998). "The term "workmanship" encompasses not only the quality of the finished product, but the manner of construction as determined by the 'art, skill, or technique of [the] workman." *Id*. (quoting *The American Heritage Dictionary: Second College Edition* 1391 (1982)). Therefore, the Statute of Repose protects contractors not only from claims arising out of the finished result, but from the design of the finished result. *Id*. at 100–01 (rejecting plaintiff's attempts to separate the construction of the improvement from the improvement itself.) Thus, the cars should not be analyzed separately from the system.

As to the system, C&M designed the conveyor system simultaneously while Advance Packaging designed their new facility. Advance Packaging depended on C&M to provide direction to automate the flow of materials through the facility and to advise where to install pieces of equipment. (Dep. of Michael Sylvester 25: 13–21, ECF No. 31, Ex. 3.) The transfer car lines and conveyors were installed during the construction project. *See Caron*, 828 N.W.

2d at 104 (finding that portable room partitions constituted an improvement where the partitions were part of the original design of an art classroom addition and the partitions were installed during construction). The structure of the Advance Packaging facility, such as poured concrete, was built literally around the conveyor system.

### ii. Value added

The transfer cars and conveyor system represent a significant monetary investment in—and add value to—Advance Packaging's real property. In 2006, Advance Packaging purchased land and constructed its new 40,000 square foot facility for approximately $14 million. Equipment purchases, including machines used in the manufacture of corrugated board and boxes, totaled approximately $26.8 million. (Aff. of Daniel Boucher ¶ 5, ECF No. 34, Ex. 9.) The design and installation of the C&M conveyor system cost $3.4 million. The equipment itself accounted for approximately $2.39 million, and the installation for $.72 million. (ECF No. 33, Ex. 4b at 28). The conveyor system enhances the value of the Advance Packaging facility. *See Oakwood Hosp. & Med. Ctr.*, 183 F. Supp. 2d at 940–41 (purchase and installation of television sets in hospital rooms for $100,000 added to capital value of hospital facility); *Caron*, 828 N.W. 2d at 105 (inferring that portable room partitions enhanced the capital value of an art classroom addition).

In *Adair*, the defendants argued that the conveyor did not add value to the property because the conveyor could be removed without loss of value. 741 F.2d at 115. The Court rejected that argument, stating that "[t]he test for an improvement is not whether an addition

13

can be removed without damage to the land, but if it adds to the value of the realty, for the purposes for which it was intended to be used." *Id.* (quotation marks and citations omitted). The *Adair* Court's findings are equally applicable here: "The coal handling system, which transports raw material to processing facilities, is essential to the operation of the factory as designed and enhances the utility of the property. . . . [T]he material handling system enhances the utility of the property and adds to its value as used by linking the various facilities." *Id.* Here, the conveyor system enhances the utility and productivity of the corrugated materials processing by linking various machines and expediting the processing times. *See Matthews v. Beloit Corp.*, 807 F. Supp. 1289, 1292 (W.D. Mich. 1992); *Phillips v. Langston Corp.*, 59 F. Supp. 2d 696, 703 (E.D. Mich. 1999).

### iii. Relationship to land and occupants

The entire conveyor system, including the conveyor surface and computer programs, occupies about twenty percent of Advance Packaging's 40,000 square foot facility. (Dep. of Michael Sylvester, 18:14–19:14, ECF no. 27, Ex. A.) The iron guide rails for the car are installed directly into the floor of the facility and concrete was poured flush around them. The guide rails are necessary for the operation of the car because they prevent the cars from traveling off their designated paths. The CIMS computer system interfaces with Advance Packaging's scheduling system to direct the cars across the facility, so as to control machinery input and output. The Court in *Adair* found the entire conveyor system essential to the operation of the company, as is the case here. The conveyor system is connected to the

land and is integral to the daily functioning of the facility. *See Phillips*, 59 F. Supp. 2d at 703; *Dominguez,* 122 F. Supp. 2d at 856.

Advance Packaging does not consider the conveyor system an improvement to its property, but personal property. (Aff. of Daniel Boucher ¶¶ 7, 10 ECF No. 34, Ex. 9.) On appraisals, the building is listed separately from the equipment, including C&M equipment. (Aff. of Daniel Boucher ¶ 8, ECF No. 34, Ex. 9.) All C&M equipment, including the transfer cars, are listed on corporate property tax returns as personal property that depreciates over its assigned life. The personal property tax designation includes fixtures and other equipment that constitute improvements, such as the machinery that cuts the corrugated cardboard. Such a designation is irrelevant for the purposes of the statute of repose. *Matthews*, 807 F. Supp. at 1293 ("This is not a question of what is subject to real or personal property taxes."). *See Phillips*, 59 F. Supp. 2d at 704 (finding that a machine used to create boxes from cardboard constituted an improvement); *see also Adair*, 741 F.2d at 114 (statements in affidavits that the conveyor is not an improvement to real property did not create an issue of fact because the determination of whether the conveyor is an improvement is a matter of law).

### iv. Permanence

As to the last factor, Plaintiffs contend that the transfer cars are independent and lack permanence in the conveyor system or the facility. The transfer cars have a separate operator's manual, distinct from the conveyor system. Moreover, although the cars are heavy, they could be moved to another facility. If Advance Packaging were to move to a new

15

facility, the company might decide to remove and re-install the equipment, based on a cost-benefit analysis. (Aff. of Daniel Boucher ¶ 9, ECF No. 34, Ex. 9.)

The fact that the conveyor system could be moved is not dispositive. The *Adair* court cautioned against equating "permanent" with "eternal," and found that a conveyor system, bolted into concrete and including a walkway, supported the permanence factor. *Adair*, 741 F.2d at 115–16. The conveyor system in *Adair* could be removed, but the Court nonetheless found it permanent. *See also Dominguez,* 122 F. Supp. 2d at 856 (industrial baking oven custom designed to fit the space available supported permanence factor).

Here, the conveyor system is physically annexed to the Advance Packaging structure by guide rails installed directly into the concrete flooring. The conveyor system, including the transfer cars, could be moved to another facility, but a move would require use of riggers capable of moving heavy equipment and machinery. (Dep. of Michael Sylvester 78:17–79:1, ECF No. 27, Ex. A.) Furthermore, there is no evidence that Advance Packaging intends to move its facility or move the conveyor system. *Phillips*, 59 F. Supp. 2d at 704 (The term "permanent" means that "the improvement is to function for a long, indefinite period without regard to unforeseeable conditions."). *Cf. Caron*, 828 N.W. 2d at 104 (finding portable room partitions in an art classroom were permanent despite their mobility because the teachers intended to use the walls consistently in the future). The conveyor system is a permanent improvement to the Advance Packaging facility.

Therefore, all four factors of the *Adair* analysis support a finding that the conveyor system constitutes an improvement. Because more than six years have passed since the "completed improvement, use, or acceptance of the improvement," Plaintiffs' claims are barred by the statute of repose. Mich. Comp. Laws § 600.5839(1).

### C. Product Liability Claims

Defendants have moved for summary judgment on the merits of Plaintiffs' product liability claims (ECF No. 44.) Because Plaintiffs' claims are barred by the Michigan statute of repose, Defendant's motion is moot.

### IV. Conclusion

For the reasons set forth above, Plaintiffs' claims are barred by the Michigan statute of repose. Judgment will be entered in favor of Defendant. The Court will issue an Order consistent with this Opinion.

Dated: October 17, 2014   /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE